Carr, J.
The case agreed reduces this, I think, to the sole question, whether in a single transaction, it is usury in a bank, in discounting a note of sixty days, to take interest for the first and last day ? The case agreed, I know, states, that the note when discounted was to be put on accommodation footing according to the usage of the bank; which usage was, that it was understood between the parties, that the loan was for sixty days only, with the days of grace added, but it was expected and intended, that if no alteration took place in the situation of the bank, or in the apparent validity of the security given by the borrower, the first note should be paid and taken in by a like note, to be discounted on the last of the days of grace of the first. If this be taken by itself, I do not think it amounts to any thing like a contract, binding the parties to a renewal of the notes. But the latter part of the case agreed, puts this beyond question: for it states, that, notwithstanding the general expectation that an accommodation note will be renewed, yet full discretion is reserved to the bank, to refuse such re *255 newal, at pleasure, and to require the payment of the first or any succeeding note when it becomes due. Surely, this puts an end to the idea of any thing like contract, beyond the first loan.
Taking this, then, as an isolated loan for sixty days, with the three days of grace, and that the bank discounted it, retaining interest for the first day, and the day it became payable, 1 cannot think there is usury in the transaction. The borrower has the use of the money on both days. He gets it, or may get it, at an early hour in the day it is discounted, and he may return it at the last moment of the bank day when it is payable: he is not in default, and cannot be protested till after that day. How, then, can he be said to pay interest for a day more, than he has the use of the money ? In Thornton v. The Bank of Washington, 3 Peters 36. this point was directly before the court, and, indeed, was the sole point in the cause; and the court said, “ The taking of interest for sixty-four days, is not usury, if the note, according to the custom and usage in the banks at Washington, # was not due and payable, until the sixty-fourth day.” In the case before us, the usage is expressly stated; and that the last day for which interest was charged, was that on which the note became payable. It was said, that case did not apply, because it was on a demurrer to evidence: but that circumstance could have no possible effect, on the position taken by the court, with respect to a single loan. The evidence was full to establish that point. The counsel there, however, contended, that there had been successive renewals of the note, and that these had been on the sixty-third day, and the money credited on that day, on account of the existing note; and thus, in effect, that sixty four days interest had been taken, on sixty-three days only. To this argument the judge who delivered the opinion, answered, that if there had been proved any contract between the bank and the party for whose benefit the original discount was made, that the original note should be so renewed, from time to time, and the extra day’s interest be taken thereupon by the bank, so that the bank would have been bound to make the *256 renewal, and the party bound to renew, and not to pay the note at maturity, there would have been strong ground on which to rest the argument. But he considered no such contract to be proved by the evidence, and remarked, that the court could not infer it, especially, in favor of the demurrant, against whom (as having taken the case from the proper tribunal) all fair inferences are to be drawn. The only effect of the demurrer upon that case, then, was, that it prevented the court from inferring an agreement to renew, not proved; but in our case, it is expressly agreed, that both the bank and the party were free from any obligation to renew. The fact, then, that the borrower did renew his note on the sixty-third day, no more makes it usurious, than if he had paid off the note on the sixty-third day. The Bank of Utica v. Wager, 2 Cowen 712. also decides (as I understand it) that, in discounting notes, interest may be taken for the three days of grace.
Both on reason and authority, I think the j udgment should be affirmed.
Cabell, J. concurred.
Brooke, J.
The farmers bank is an incorporated bank, chartered by the legislature mainly for the purpose of lending money: that is its trade; and all contracts with it, must he construed according to the usages of that .trade, which all are presumed to know who deal with it. Their contracts are to be explained by the usages which make a part of them, unless such usages be contrary to law. Upon the case agreed before us, it is impossible to misunderstand the contract. But it is insisted, that admitting the usage, the contract is against law; that it violates the statute against usury. Taking it in the first light, that is, that every renewal of the note was a separate and substantive contract, the question is, whether the taking interest for the first day, on which the note was discounted, and for the sixty-fourth day, that on which it was to be paid, inclusive, was usurious ? I think it must be admitted, that for every day, or *257 part of a day (for the law knows no fraction of a day), the borrower had full control over the sum borrowed, and the bank had lost its control, so that it could not use the money by lending it to any one else, or otherwise. The bank, then, could take the interest without violating the statute. The usage was not against law. On the day the note is discounted, the borrower may instantly check for the money, and have the use of it; the bank loses its control over it; it cannot be loaned to another : the borrower continues to have the use of it until the sixty-fourth day, and may pay it to the bank at any time during bank hours of that day, and he has the control of it until he pays it. If he pays, with or without suit, after that day, the borrower is only chargeable with interest from that day. This point is well settled by the supreme court in the case of Thornton v. The Bank of Washington, and by the case of Renner v. The Bank of Columbia, 9 Wheat. 581. in which a similar usage to the usage of the farmers bank, was established. Considering the case in the other light,—that is, that the several renewals of the note constituted but one entire contract,-—the question would be one of more doubt. .But that is not the contract stated in the case agreed. Anderson was not bound to renew his note, and might have paid it when it fell due ; nor was tire bank bound to discount it if offered; on the contrary, it was left entirely optional with the bank. The last finding in the case agreed, is conclusive on this point; and it explains the previous findings which were relied on by the counsel for the appellant. Had the several renewals of the note been agreed upon by the parties, so as to bind them both, then the question would have arisen, which has been so much argued, whether the discounting of the several notes on the day each became due, and thereby double interest taken for one day, was usury or not. But as before remarked, there was no such contract. When that question arises, it will be time enough to decide it. I think the judgment must be affirmed.
*258 Tucker, P.
Two questions liave been raised in this case, on the decision of which the correctness of the judgment of the circuit court must depend: 1. Whether the taking interest by our banking institutions for sixty-four days, on what is usually called a sixty day note, is in itself usury ? And 2. if not, whether the duplication or lapping of the original and renewed notes, constitute usury?
It is obvious, that both of these questions are vital to the banks. It is found to be the universal usage of all of them, to take sixty-four days interest on sixty day notes; and where they lend on what is called accommodation, to renew the notes from time to time, so as to enable the borrower to take up the original note, by renewal in bank, and applying the proceeds to the payment of it. If these usages be usury, then every note which has been negotiated at the banks since their establishment, has been usurious and void; their present securities are usurious and void; the debtors may pay or not at pleasure; and the ruin of these institutions, the depreciation of their paper, and the annihilation of their stock, must be the consequence. It is said, indeed, that these consequences must not be regarded; and, certainly, it is most true, that it is the province of courts of justice, in the general, to shut their eyes to consequences. Yet nothing is more common than to look to the mischiefs of a doctrine, as a pregnant reason for refusing to it countenance or approbation. At least, it may be truly said to furnish strong motives for caution, that the effect of a decision may be to shake the transactions of a whole community, and to bring embarrassment and ruin upon thousands; and this too, where the petty subject of complaint is, that in the transaction of the business of extensive banking establishments, conducted according to long established usage, the party has been compelled to pay one and a half cents more, for the loan of 100 dollars for sixty days, than the law allows.
Notes negotiable at the banks, having been placed upon the footing of foreign bills of exchange, are to be treated of course as commercial paper, and to be governed by the law and custom of merchants, as applying to banking transac *259 tions. This law and custom of merchants, though in most of its principles well fixed and ascertained, yet recognizes some variety in usages. Thus it is, that the general usage and course of trade is respected in the decision of controversies coming within its influence. Thus it is, that though by the general law merchant, payment of a promissory note must be demanded on the third day after the time limited for the payment thereof, in order to charge tire indorser, yet, in the district of Columbia, where the custom of the banks is to make the demand on the fourth day, that custom is sanctioned as the law of promissory notes negotiable in those banks. Renner v. Bank of Columbia, 9 Wheat. 581. So here, the custom of taking the discount for sixty-four days on notes which are payable on the sixty-fourth day after date, including the day of the date, having been uniformly established since the foundation of the banks, that custom ought to be sustained. A usage, indeed, which is permitted to control a general principle, must be uniform and general, and moreover, reasonable, fair, impartial, and not contrary to law. When so proved, it is said to become a part of the law, and will be recognized as such. Consequa v. Willings &. Peters C. C. Rep. 225. Now this is emphatically the case with the usage in question here. It is coeval with the banks. It has governed the innumerable contracts which have been made with them for thirty years. It has never been questioned by the legislative body. The state having an interest in the stocks, has also a supervisory control over the several establishments. Its committees examine their transactions annually, and scrutinize their course of business. Yet, notwithstanding all this prudent jealousy, and the guards which have been thrown around the banks, the present prevailing practice of discounting notes has never been called in question. Charters, moreover, have been renewed, without pruning away these excrescencies, if indeed they be such; and this silent approbation of the legislature has confirmed a practice, which if now for the first time declared illegal, must shake all our banks to their foundations.
*260 Under the influence of these considerations, I do not hesitate to rest this case upon these grounds: that the usage complained of, has uninterruptedly prevailed for a number °f years, and been so uniform and invariable, as to have become the known and established rule in all transactions with our banking institutions; and that it must be considered now, as forming part of the law which is to govern the discount of commercial paper. It is found, by the case agreed, to be the universal custom of the banks in relation to this commercial paper, which has sprung up in our banking system. This is sufficient to establish it, unless, as I have said before, it is unequal, or repugnant to the principles of general law. For “ a custom of this sort,” as judge Pendleton tells us “when first brought into court is a matter of fact, and merchants are examined to prove what it is. When legal decisions are made upon it, it becomes the law of the land, of which all parties and courts are to take notice without stating it.” 1 Call 159. And after such decisions, it needs not evidence to support it. Nay more, it ought no longer to be left to juries to decide upon it, as a fact, on the mere evidence of merchants: when once established, it is propounded as law by the court. 2 Burr. 1222,
- I have already cited the cases of Renner v. Bank of Columbia and Consequa v. Willings, which sustain these principles, in relation to the law merchant. I will add, that they are also sustained in Thornton v. Bank of Washington, where the custom of taking interest for sixty-four days is declared to be not usurious in the district of Columbia, since the custom there is, that payment of the note is not to be demanded until the sixty-fourth day, including the day of the date. I think too, that the decision of this court in the case of Stribbling v. The Bank of the Valley, 5 Rand. 132. goes far to sustain it.
I shall, however, examine this case, on other grounds, that we may be enabled to see how far we should regard this custom of the banks, as reasonable. If a bank were now, for the first time, to be established, I should deem it neither unreasonable nor unfair, that it'should adopt the rule *261 which, the Virginia banks and others have adopted. It is not unreasonable. The bank is an association of money lenders, whose business it is to make profit by the interest upon loans. The instant it parts with its money, it is reasonable that the party who has the use of it, shall be chargeable with that use. It would be very unreasonable, that he should not. It is unreasonable that he should have the use of the banker’s money at all, without paying for it. Now, he has the use of it on the day that it is borrowed; early in the business hours of that day; within those hours, which me the important hours of the business of a merchant. Why should he not pay interest for that day ? Why should his responsibility for interest be postponed to the next day? If the interest is compensation for the use, he ought to pay as well for the use on the day of the date, as for the day after the date; for, peradventure, it was of most value to him on the former. But it is said, he had the use, for only half or part of the day, and the law does not allow fractions of a day. Here, let it first be remarked, that by the common law, whether the day is to be taken as inclusive or exclusive, depends upon the reason of the thing, and is to be decided according to circumstances, so as to give effect to the transaction, and to further justice between the parties. Lester v. Garland, 15 Ves. 248. Pugh v. Duke of Leeds, 2 Cowp. 714. Where there are no such circumstances to alter the general rule, that rule is, that, where the computation is to be made from an act done, the computation must be made inclusive of the day that it is done. Hob. 139. 3 East 407. Doug. 463. 9 Cranch 120. 4 Bac. Abr. 55. And if the day of the act be included at all, the whole day must be included, for fractions of a day are not allowed. 9 Cranch 104. 4 Bac. Abr. 55. 56. Now, I have already shewn, that, according “ to the reason of the thing,” and upon principles of justice, the bank ought to have its interest from the moment the money is lent. But as the law allows no fraction of a day, it must have it for the whole day, or not at all. It cannot charge for half or three fourths of a day, since the law admits not of computation by halves and *262 fourths. It therefore charges for the whole day. Is this usury ? Surely not. The law allows it interest at six per cent, for such time as the money is lent: now, it is lent for half a day, for which it is entitled to interest; but the law itself considers the half day a whole day. Accordingly, it is entitled to interest for the whole day. If this should savour of refining, let it be considered that the refining is on the side of the debtor, who for a few cents or farthings, would upturn the whole commercial usages of the banks, and involve them in ruin, upon the nice distinctions of law about fractions of a day, and the including or excluding the day of the date of the loan. And let it also be remembered, that it is more reasonable (as the law admits no fractions of a day) that the benefit of the rule should be given to the bank, rather than to the borrower. The borrower must either pay half a day too much, or the bank receive half a day too little. Now, to the borrower, this is of little consequence, as his transactions are few. But if on each of the innumerable transactions of the bank, they were to lose half a day, the loss would be very considerable, as the calculations of the learned and diligent counsel for the appellant have abundantly proved. I think, indeed, it has in effect been admitted by the counsel in the argument, that half a day may be included and computed as a whole day. For the last day is included even by them, though the borrower holds the money but a part of that day; and this can only be done by considering the half day as a whole day; since the law, which rejects fractions of a day, would not permit the fractions of the first and last day to be welded together to make a whole day.
I pass to the second question. I concur entirely in the opinion of the supreme court in the case of Thornton v. Bank of Washington, that “ if there had appeared any contract between the bank and the borrower, that the note should be renewed from time to time, and the extra interest thereupon be taken by the bank, so that the bank would have been bound to make the renewal, and the borrower would have been bound to renew and not to pay the note at *263 maturity, there would have been strong grounds of objoction to the proceeding.” But, in this case, there was nothing binding on the parties. The bank was not bound to renew. It made the arrangement “ on accommodation footingand; according to the usage in case of accommodation, though there is an expectation and intention to renew by both parties, “yet full discretion is reserved to the bank to refuse such renewal at pleasure.” Moreover, as to the borrower, there is no pretence to say that he was bound to renew, and not to pay, the note. Can it he believed, that such was the intention of the parties ? Can it be contended, that if Anderson had tendered the money due upon his note, and had refused to renew it, the bank was not bound to accept payment? Can it be pretended, that if he so offered payment, and refused to renew, the bank could, under this contract, have maintained an action against him for not renewing ? I think the ingenuous counsel of the appellant would not themselves answer this question affirmatively.
I consider, then, that, in this case, each note is a substantive, distinct, transaction. Anderson might have paid up any of the notes at maturity, without discounting a new note. The discounting the new note, was to enable him to raise the money to pay off the old one. It was a favor done him, to enable him to prepare for saving himself and friends from protest. Now, this he could not do, without discounting the new note, at least as early as the last day of grace; for if he had waited till the next day, the bank must either have protested, or lost the responsibility of the indorsers.
It remains only to observe, that if such an arrangement for lapping the notes, should appear to be a cover for usury, it would be treated accordingly; and, moreover, that the principles decided in this case, like those in Stribbling v. The Bank of the Valley, are decided by us in reference only to banking transactions, and as sustained only by the established custom or usages of those institutions. Indeed, if the bank itself, departing from established usage, should enter into an agreement for a lapping of the notes not justified by that usage, it would lose its protection; just as in *264 Stribbling v. The Bank of the Valley, it was said, that though they might take interest in advance upon sixty day paper, because that was according to the usage, yet, if they took it in advance of a loan of eighteen months, it would be usury, because there is no usage to justify. I am of opinion that the judgment should be affirmed.
Brockenbrough, J.
I cannot concur in the judgment of affirmance.
The first question is, whether the taking interest for sixty-four days, on a single note, negotiable and payable sixty days after date, which is permitted to run the days of grace, and which by the usage must be discharged at the end of the sixty-fourth day, is usury or not 1 On this question, I concur in the opinion, that it is not usury. According to the case agreed, when a note is discounted, the borrower receives the amount of it in money, minus the interest for sixty-four days, at an early hour of the first day, and he is not obliged to pay it till the latest moment of the sixty-fourth day. The law knows no fraction of a day; and, therefore, the first day on which the money is received, must be counted as a whole day. The borrower, then, has the use of the money (except the interest paid in advance, which the bank has the right to deduct) for sixty-four days complete, and it cannot be usury for the bank to take interest at the rate of one half of one per cent, for every thirty days (the charter giving it) for the whole time the borrower has the privilege of using it.
The second question is, whether the same rule prevails in accommodation notes, where the second note is discounted on the same day that the first is payable, and for the pur-, pose of paying off the first ? In this operation, interest is charged for that day, on the second note as well as on the first, that day being the last of the first note, and the first day of the second note. My opinion is, that this is usury. I admit that, to constitute usury, a corrupt agreement must be necessary; and that the expectation and intention, which were formed both by the bank and the borrower, on the day *265 when the first note was discounted, that the first note should be paid and taken in by a like note to be discounted on the day when the first should become due, does not amount to an agreement that it should be so done; for notwithstanding that intention and expectation, either party was at liberty to disappoint it; and the case agreed expressly states, that the bank may refuse to renew. But it also states, that the second and succeeding notes were actually discounted, according to such previously existing understanding and intention, on the day on which the immediately preceding notes fell due; and it further states the usage to be, that when the substituted note is so discounted, the proceeds thereof are immediately applied to the payment of the note so first discounted; and that the loan made by the farmers bank to Anderson, was made in strict conformity with the usage. Here, then, it is evident that on the day on which the first note was payable, the second note was discounted, and the proceeds of the second note were not drawn by Anderson, but were immediately applied to the payment of the first note. The previous intention and expectation was, on that day, carried into effect, and became an agreement on that day between the parties, and the discount and appropriation, by consent of both parties, are evidence of the agreement. When fairly understood, this is the language of that agreement: the bank says, we will lend you this money, and charge you interest from this day inclusive; but you are not to draw it out; you shall not use it for any other purpose than to discharge your first note, which is not due till the expiration of this day, and on which you paid the interest for this day: these are the only terms on which we will lend it. The borrower says, I agree to your terms. Here, then, is a bargain complete. It is an agreement between the parties, that double interest shall be paid on the same sum of money for that day. Is it not the same sum of money ? The counsel for the appellee argued, that each note is to be considered as a distinct, substantive transaction, and the question was so decided by the supremo court of the U. States in Thornton v. The Bank of Washington. *266 It is true, that the notes are distinct, but the money which they represent is not a distinct parcel of money; it is the same money, which the borrower obtained possession of on the first day of discounting the first note, and for the use of which he is still paying interest, but for which the two contracting parties now agree, that for that day double interest shall be paid. The same agreement was made on all the subsequent renewals.
• -., According to my view of this case, the first note was legal; and if it had stopped there, it would have been all right; but the succeeding notes were, I think, tainted with usury. By this course of proceeding the bank gains five days on a note six times discounted.' The charter gives them five days in ordinary years, and six in leap years, and their usage gives them nearly five more without law.
The counsel for the appellant put the case of a similar transaction between individuals. A. borrows 6000 dollars of B. on the 1st January, and gives his bond with surety for it, to be paid on the 31st January with interest from the date inclusive. An understanding exists between them, that on the last day of January in the morning, A. may take in that bond, by paying interest on it for the thirty-one days, and by giving a new bond with surety; or that if it be not taken up or discharged by sunset of that day, a capias ad respondendum may be issued on the 1st February. (The three days of grace, the interest in advance, and the, protest, form no part of the understanding.) This is, however, an understanding merely, each party being at liberty, the one to discharge the bond on the day it falls due, and the other to refuse the renewal, and to sue. But on the 3lst January, A. pays the interest for the thirty-one days, takes in his first bond by giving a new one., with surety, dated on that day, payable (with interest from the day of the date inclusive) on the 28th February. B. has thus received interest once for the 31st January, and the execution of the second bond is proof of an agreement between them, that interest is again to be received for the same 31st January, when the second bond shall be paid. The same understanding exists, that *267 the second may he renewed, with the same discretion as before; and on the 28th February, interest is paid and received on the second bond for twenty-nine days, including the day of the date of the second bond, and the day when duo. And the same operation is continued through all the months of the year. Now, I ask, whether, in such case, the borrower will not have paid the lender on the 31st December (if the last bond shall then be discharged) interest at the rate of six per cent, per annum for eleven days more than there are in the year, and will he not have paid it by virtue of an agreement, or rather of eleven distinct agreements between them ? I do not put this case, as one in which the lender resorts to the practice, as a cover to screen him from the statute, or to evade it. I suppose, they both believe it to be fair; neither intends to violate the usury laws; the one to give, and the other to receive, interest at six per cent, for eleven days more than there are in the year. This is usury, though both parties may think they are steering quite clear of it. Childers v. Deane, 4 Rand. 411.
The case which I have thus put, is the case at bar, except that the lender instead of being a natural person is a corporation. And we have the authority of this court for saying, that a corporation may commit usury. Stribbling v. The Bank of the Valley, 5 Rand. 132.
What, then, is to protect the bank in this case, from the operation of the statute against usury? Its own usage, and that of the other banks of Virginia. I do not think, that the usage ought to control a statute. “ It would be strange indeed (says chief justice /Savage) if any set of men, or companies of men, should become paramount to the authority of the legislature.” Bank of Utica v. Wager, 2 Cowen 763. To which I will add, that the banks ought not to be allowed to make the law; they should obey it.
It is with great diffidence that I have ventured to give an opinion, which is in opposition to that of the supreme court, and of my brethren. It is, however, my opinion, and 1 have no right to withhold it.
Judgment affirmed.